# WILLIAM CLARK

. *v.*

# THE PEOPLE OF THE STATE OF ILLINOIS.

1. EVIDENCE—*competency*—*res gestæ.* It is not competent, on the trial of a party charged with crime, to prove the expressions of a third person, made, out of the presence of the accused, relative to his guilt ; nor to show that an officer had sent a message that the accused, who had committed the crime, was in jail. Such matters are no part of the *res gestæ.*

2. ERROR *will not always reverse a judgment.* But a judgment of conviction will not be reversed because of the improper admission of such proof, if it appear from the whole case that justice has been done, and that the error did not operate to the prejudice of the prisoner.

WRIT OF ERROR to the Recorder's Court of the City of Chicago; the Hon. ROBERT S. WILSON, Judge, presiding.

At the October term, 1862, an indictment was returned by the grand jury into the court below, against the plaintiff in error, William Clark, charging him with having stolen two bay mares, the property of one Archibald Scott. At the same term, the prisoner was put upon his trial, and a verdict of guilty being returned by the jury, a judgment was entered accordingly.

It appears the mares were stolen from Scott, in Henry county, in this State, and were found in the possession of the prisoner in the city of Chicago. The facts and circumstances tending to establish the guilt of the accused, are sufficiently stated in the opinion of the court.

But exception being taken to some of the expressions of two of the witnesses on the part of the prosecution, Elizabeth Scott and Mary Buchanan, their evidence will be given.

*Elizabeth Scott* testified as follows:

I live in Henry county, Illinois. On the night of the 7th of August last, my husband, Archibald Scott, put into his pasture two bay mares.. The next morning they were gone. They were his property. He is sick abed, and could not come here.

The horses are worth one hundred dollars apiece to us. John M. Burns brought the horses home. I knew the horses were in Chicago, *because the sheriff of Mercer county sent word to the sheriff of Henry county, that the horses were in Chicago, and that Clark, the man who stole them, was in jail.* They were our old family team. I know the horses that were returned to us by Burns, to be the same horses that were taken from us on the night of the 7th of August last.

On cross-examination, she said: I do not know what the cash value of the horses is; they are worth one hundred dollars each to us; I know nothing about this matter except what I have stated.

*Mary Buchanan* said:

This defendant came to our barn Sunday morning, and brought a horse there; he then went and brought two more. I know this is the same man. My husband lent him twelve dollars. He said that he wanted to pay freight on some horses that were at the depot. I did not want my husband to lend him the money, *because I thought the horses were stolen.* My husband let him have twelve dollars, and he left a horse as security for the money. Our stable is in this city, — Chicago.

On cross-examination, she said: There was another man came with this one. He was a tall, slim, dark-skinned man, with light whiskers. I remember this man. He borrowed twelve dollars of my husband to pay the freight on some horses. The other man was present. He sat on the steps close by, with a newspaper up to his face. He seemed to be writing something with a pencil. He told this man to feed the horses and take good care of them. He told my husband to feed and take care of them too. One of Bradley's men arrested both of these men and took the horses away. The man that took the horses away said that he was an officer, and that he would be responsible for the twelve dollars. I saw both of the men, this man Clark and the other man, in Mr. Bradley's office. I should not know the other man if I saw him. This man came to the stable first with one horse. Then the other man and he, came with two horses.

The defendant objected to the statement made by the witness Scott, of the message sent to the sheriff of Henry county that the horses were in Chicago, and the prisoner, who stole them, in jail; and the statement of the witness Buchanan of the opinion she had expressed to her husband that the horses were stolen. But the court overruled the objections, and the defendant excepted.

The court below refusing a motion for a new trial, the defendant sued out this writ of error.

The only questions presented upon the record, are, as to the admissibility of the statements of the witnesses mentioned; and whether this court will reverse a judgment upon so unimportant a question, if substantial justice has been done upon the whole case.

Messrs. SAMUEL M. FELKER, and ARTHUR F. WINDETT, for the plaintiff in error.

Mr. D. P. JONES, State's Attorney, for the People.

Mr. JUSTICE WALKER delivered the opinion of the Court.

It is insisted that this judgment should be reversed, because the court below admitted improper evidence. It was what Mrs. Buchanan said at the time the horses were brought to the stable of her husband, and the word sent to the sheriff of Henry county, that was objected to, as improper evidence. The opinion of the witness, expressed to her husband, in the absence of the prisoner, that the horses were stolen, was clearly incompetent evidence. And of the same character was the message sent the sheriff, that they had arrested accused, who had stolen the horses. This was no part of the *res gestæ.* It was wholly disconnected with anything done by the prisoner, and he was not in the least responsible for it.

But the question arises, whether this evidence could, in any event, operate to the prejudice of the prisoner. If so, the judgment must be reversed. The object of instituting courts

is to dispense justice, and prevent wrong. And where justice has been fully and properly dispensed in a case, the object of the law has been attained. It therefore follows, that if the great object of a trial has been had, and slight departures from forms have occurred, it is not a sufficient reason for setting aside the proceedings, and for pursuing again all of the forms of a new trial to arrive at the same result. If then, this evidence could not have prejudiced the rights of the accused, there is nothing of which he can rightfully complain, and hence the judgment should not be disturbed.

When considered in connection with all the evidence in the case, it seems to be entirely immaterial, and could not have changed the result of the verdict. It seems only to have been incidentally stated by the witnesses, and explanatory of other acts that had been done by them, and not called for or relied upon by the prosecution. It could not have misled the jury, and consequently was not prejudicial to the rights of the accused.

Upon the whole evidence of the case, it is urged that the jury were not warranted in their finding. The theft of the horses by some one is clearly proved. Of this there seems to be no doubt. And, as evidence of the guilt of the accused, he is found a few days afterwards in the possession of the horses. It is proved that he took one of them to the stable of the witness, and left it to be kept, and also pledged it for money to pay the railroad freight on the others. When he pledged this horse, he said nothing about its belonging to another person. He acted with it in all respects as though it was his own. Nor did he say anything to the stable-keeper about it or the others belonging to Hefflin, at that or the subsequent interview. Neither of them pretended that Hefflin was the owner. All that is relied upon to prove that fact, was Hefflin's directions to the stable-keeper and to accused to feed and take good care of the horses, when the others were afterwards brought to the stable, and also the declarations of the prisoner at the time he was arrested.

These directions of Hefflin in reference to the care of the

horses, and the prisoner's declarations to the officer who arrested him, that the horses belonged to Hefflin, and that he was only taking care of the horses for Hefflin, were all properly before the jury for their consideration. They were evidence, and the jury no doubt gave them their full weight, when considered in connection with the other circumstances in the case. He, throughout, acted as the owner of the horses. He pledged one to obtain money to pay freight on the others. He made all of the arrangements with the keeper of the stable, and brought them all and placed them in his custody. And Hefflin said nothing to indicate that he claimed any interest in the property. These facts clearly prove that accused was the principal in the transaction, the active man, and not that he was acting for another.

In view of all this evidence, we are unable to see how the jury could have arrived at a different conclusion than they did, and the judgment of the court below must be affirmed.

*Judgment affirmed.*